[Cite as *State ex rel. DeWine v. S&R Recycling, Inc.*, 195 Ohio App.3d 744, 2011-Ohio-3371.]

STATE OF OHIO, COLUMBIANA COUNTY
IN THE COURT OF APPEALS
SEVENTH DISTRICT

| | |
|---|---|
| STATE ex rel. DeWine, Atty. Gen., et al.,) | CASE NO. 09 CO 45 |
| APPELLANTS, ) | |
| v. ) | OPINION |
| S&R RECYCLING, INC., et al., ) | |
| APPELLEES. ) | |

CHARACTER OF PROCEEDINGS:      Civil Appeal from the Court of Common
Pleas of Columbiana County, Ohio
Case No. 08 CV 792

JUDGMENT:                                      Affirmed.

APPEARANCES:
For Plaintiff-Appellant:                    Mike DeWine, Attorney General,
State of Ohio                                  and Amanda K. Sturm, James A. Carr,
and Brian Ball,
Assistant Attorneys General,
for appellant state of Ohio.

For Appellants Toalstons:                Pelini, Campbell, Williams &
Traub, Craig G. Pelini, and Raymond C.
Mueller, for appellants Melvin and
Frances Toalston.

For Defendants-Appellees:              Oldham Kramer, Matthew W. Oby,
S&R Recycling, Inc.,                        and Caryn L. Peterson, for appellees.
DiPasquale and Romeo Maffei

JUDGES:
Hon. Cheryl L. Waite
Hon. Joseph J. Vukovich
Hon. Mary DeGenaro

Dated:  June 30, 2011

WAITE, Presiding Judge.

## Summary

{¶ 1} Appellants, the state of Ohio and Melvin A. and Frances Toalston, appeal the decision of the Columbiana County Court of Common Pleas granting appellees', Simone DiPasquale and Romeo Maffei's, motion to quash service of summons and motion to dismiss pursuant to Civ.R. 12(B)(2), lack of personal jurisdiction. The main issue in this case is whether the trial court had competent, credible evidence to find that the long-arm statute of Ohio did not confer jurisdiction over these defendants. The record supports the trial court's decision not to disregard the corporate form and not to assert personal jurisdiction over DiPasquale and Maffei for the alleged Ohio Environmental Protection Agency ("OEPA") violations. Accordingly, we affirm the lower court's ruling.

## Case History

{¶ 2} The property that is the subject of this litigation is a 30-acre parcel located at U.S. Route 30 and State Route 644, Campbell Road, Kensington, County of Columbiana. S&R Recycling, Inc. bought the property from Melvin and Francis Toalston by a land contract on August 27, 2002. Prior to 2000, Tri-State Materials owned the property and operated a hazardous-waste recycling landfill for a number of years. S&R is a New York corporation authorized to do business in Ohio. Appellees Simon DiPasquale and Romeo Maffei each own 50 percent of S&R. Both DiPasquale and Maffei are residents of New York. DiPasquale is the president of S&R; Maffei holds no official title.

{¶ 3} S&R also owns a 120-acre parcel adjacent to the property at issue. S&R obtained a permit from OEPA to operate a construction-debris landfill on the 120-acre parcel. S&R purchased the 30-acre property to allow for better highway access to this 120-acre parcel.

{¶ 4} After purchasing the property, S&R hired Bowser-Morner, an environmental consulting firm, to analyze it. Bowser-Morner informed S&R that the property might be in violation of several of Ohio's hazardous-waste and solid-waste laws.

{¶ 5} OEPA conducted a complaint investigation at the property. The inspection discovered several violations of R.C. Chapter 3734. OEPA informed S&R of these violations by sending eight notices of violation to S&R and to appellee DiPasquale between August 21, 2003, and August 26, 2005. OEPA then revoked the permit previously issued for the adjacent 120-acre parcel. Because of this revocation, S&R never began operating a landfill, did not conduct business on the property, never hired any employees, and never made any profit as a result of its ownership of the property.

Procedural History

{¶ 6} The attorney general, at the request of the OEPA, filed a complaint on August 7, 2008, against S&R, Simone DiPasquale, and Romeo Maffei, for violations of R.C. Chapter 3734. Appellees filed a motion to quash service of summons and to dismiss pursuant to Civ.R. 12(B)(2), for lack of personal jurisdiction. An evidentiary hearing was held and both appellants and appellees filed posthearing briefs. On September 30, 2009, the court granted appellees' motion to quash service, finding

that DiPasquale and Maffei were not subject to personal jurisdiction under Ohio's long-arm statute. In the judgment entry, the court concluded that although the corporate entity, S&R, was subject to personal jurisdiction under Ohio's long-arm statute, DiPasquale and Maffei were merely principals or shareholders in the defendant corporation, had not personally conducted any business in Ohio, and were therefore not subject to personal jurisdiction. The attorney general filed a motion seeking a final, appealable order and then filed this timely appeal.

{¶ 7} Appellants Melvin A. and Frances Toalston also filed a notice of appeal, but they do not raise any assignments of error or arguments. They rely on the arguments made by the attorney general.

General Law

{¶ 8} When a trial court conducts an evidentiary hearing before ruling on a motion to dismiss for lack of personal jurisdiction under Civ.R. 12 (B)(2), the nonmoving party must establish the jurisdiction of the court by a preponderance of the evidence. *Giachetti v. Holmes* (1984), 14 Ohio App.3d 306, 308, 471 N.E.2d 165. We review the trial court's ruling granting a motion to dismiss or vacate for lack of personal jurisdiction under a de novo standard. *Snyder Computer Sys., Inc. v. Stives*, 175 Ohio App.3d 653, 2008-Ohio-1192, 888 N.E.2d 1117, ¶ 1.

{¶ 9} When making a determination whether a court has personal jurisdiction over a defendant, the court applies a two-step test. First, the court determines whether Ohio's long-arm statute, R.C. 2307.382, and corresponding civil rule, Civ.R. 4.3(A)(1), confer personal jurisdiction. *U.S. Sprint Communications Co. Ltd. Partnership v. Mr. K's Foods, Inc.* (1994), 68 Ohio St.3d 181, 183-184, 624 N.E.2d

1048. If the court determines that the long-arm statute confers jurisdiction, the next step is to determine whether granting personal jurisdiction would deprive the defendant of the right to due process of law pursuant to the Fourteenth Amendment. Id. Appellants' first assignment of error addresses the two steps of this test as Issue No. 1 and Issue No. 2.

Assignment of Error Number One

{¶ 10} "The trial court erred in dismissing defendants Dipasquale and Maffei for lack of personal jurisdiction under ohio's long-arm statute."

{¶ 11} For the first part of the analysis in determining personal jurisdiction, Ohio's long-arm statute, R.C. 2307.382, sets forth the requirements for findiing personal jurisdiction over a nonresident defendant. The statute provides:

{¶ 12} "(A) A court may exercise personal jurisdiction over a person who acts directly or by an agent, as to a cause of action arising from the person's:

{¶ 13} "(1) Transacting any business in this state;

{¶ 14} "(2) Contracting to supply services or goods in this state;

{¶ 15} "(3) Causing tortious injury by an act or omission in this state;

{¶ 16} "(4) Causing tortious injury in this state by an act or omission outside this state if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this state;

{¶ 17} "(5) Causing injury in this state to any person by breach of warranty expressly or impliedly made in the sale of goods outside this state when he might reasonably have expected such person to use, consume, or be affected by the goods

in this state, provided that he also regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this state;

**{¶ 18}** "(6) Causing tortious injury in this state to any person by an act outside this state committed with the purpose of injuring persons, when he might reasonably have expected that some person would be injured thereby in this state;

**{¶ 19}** "(7) Causing tortious injury to any person by a criminal act, any element of which takes place in this state, which he commits or in the commission of which he is guilty of complicity.

**{¶ 20}** "(8) Having an interest in, using, or possessing real property in this state."

**{¶ 21}** The attorney general asserts that jurisdiction over appellees exists under subdivisions (1), (3), and (8) of R.C. 2307.382(A).

Issue No. 1

**{¶ 22}** "Whether Defendants DiPasquale and Maffei are subject to Ohio's long-arm statute because they transacted business in Ohio or caused tortious injury or used or possessed real property in this state."

**{¶ 23}** Appellants challenge the trial court's finding that it lacked personal jurisdiction over the appellees, arguing statutory liability and personal participation in wrongful acts and that the corporate veil should have been pierced.  Appellants circuitously assert that the same acts that constitute liability under these theories also show that appellees should be subject to personal jurisdiction.  Appellants provide no further analysis of this argument other than to say that "Defendants' actions

maintaining the ongoing violations at the Facility also prove that they were transacting business in the State of Ohio, causing tortious injury to the citizens of Columbiana County and using or possessing real property in this state."

{¶ 24} The trial court is able to exercise jurisdiction over S&R in this case because the corporation owns land and transacts business in the state. However, the issue here is whether appellees DiPasquale and Maffei, in their personal capacities, fall under the jurisdiction of the court. Jurisdiction over officers, directors, and shareholders of a corporation cannot be based solely on jurisdiction over the corporation itself. *In re Blue Flame Energy Corp.*, 171 Ohio App.3d 514, 2006-Ohio-6892, 871 N.E.2d 1227, ¶ 31; *Dombroski v. WellPoint, Inc.*, 119 Ohio St.3d 506, 2008-Ohio-4827, 895 N.E.2d 538, ¶ 16.

{¶ 25} There are three theories under which appellants claim that the court should exercise personal jurisdiction over appellees. First, under the theory of statutory liability, appellants assert that Ohio's environmental statutes provide for liability against the person committing the violation. Appellants further state that these statutes define "person" to include both individuals and corporations. Regardless whether these statutes provide a basis for liability, the grounds for showing that a court can exercise personal jurisdiction under Ohio's long-arm statute are separate and unique. Although the statute may provide grounds for liability, it does not automatically confer personal jurisdiction over out-of-state defendants. Appellant cites no cases in which the corporate violation of one of Ohio's environmental statutes provided the basis for personal jurisdiction over corporate officers, directors, and shareholders. Instead, in support of their argument,

appellants cite *State ex rel. Celebrezze v. Dearing & Northway Environmental Servs., Inc.* (Nov. 1, 1986), 8th Dist. Nos. 51209, 51220, and 51221, 1986 WL 12853, *9. The sole portion of that decision relevant to the question of personal civil liability extends only so far as to state: "[A] trial court is authorized to impose a civil penalty upon the *person* found to have violated Chapter 3734.  See also *Centennial Ins. Co. v. Vic Tanny Intl.* (1975), 46 Ohio App.2d 137, 141, 346 N.E.2d 33 (noting that corporate officers may be held personally liable for fraud even though the corporation may also be liable [emphasis sic])."  Id.  While that decision does state that liability will extend to the individual as well as the corporation, in no way does it set out or provide a basis for determining that personal jurisdiction exists over the individual.

{¶ 26} Similarly, appellants' next argument sets out only another means for extending *liability* beyond the corporation to the individual.  Appellants state that the "personal participation in wrongful acts" theory of liability extends personal liability over the appellees in their individual capacity.  Theoretically, appellants may very well be correct.  Once again, however, appellants cite cases that provide standards for looking beyond the corporation to the individual when assigning liability.  Each case cited by appellants focuses solely on liability.  None provide any basis to extend personal jurisdiction to the individual corporate officers or shareholders based on this theory of liability.

{¶ 27} The last argument put forth by appellants in an attempt to extend personal jurisdiction rests on the theory of piercing the corporate veil.  It is abundantly apparent that this argument is really the basis on which appellants rest all of their arguments here.  The fiduciary-shield doctrine prevents the court from considering an

individual's acts done in an official capacity when analyzing whether the individual is subject to personal jurisdiction in the forum state. *Heritage Funding & Leasing Co. v. Phee* (1997), 120 Ohio App.3d, 422, 430. In certain cases, courts will disregard the fiduciary shield and pierce the corporate veil so as to impose individual liability on active shareholders for acts taken in their corporate capacity. This theory is periodically used as a vehicle to obtain personal jurisdiction over an officer of a corporation that cannot otherwise be reached in a certain state.

{¶ 28} The Ohio Supreme Court adopted a three-pronged test to determine whether a court should pierce the corporate veil. *Belvedere Condominium Unit Owners' Assn. v. R.E. Roark Cos., Inc.* (1993), 67 Ohio St.3d 274, 617 N.E.2d 1075. The *Belvedere* test provides: "The corporate form may be disregarded and individual shareholders held liable for wrongs committed by the corporation when (1) control over the corporation by those to be held liable was so complete that the corporation has no separate mind, will, or existence of its own, (2) control over the corporation by those to be held liable was exercised in such a manner as to commit fraud or an illegal act against the person seeking to disregard the corporate entity, and (3) injury or unjust loss resulted to the plaintiff from such control and wrong." Id. at paragraph three of the syllabus. In *Dombroski*, the Ohio Supreme Court clarified that the second prong of the *Belvedere* test refers specifically to fraud or an illegal act and does not refer to mere unjust or inequitable acts that do not rise to the level of fraud or illegality. Id., 119 Ohio St.3d 506, 2008-Ohio-4827, 895 N.E.2d 538, ¶ 1-2.

{¶ 29} Because one of the purposes of incorporation is to limit the liability of individual shareholders, the party seeking to have the corporate form disregarded

bears the burden of proof. *Starner v. Guardian Industries* (2001), 143 Ohio App.3d 461, 469, 758 N.E.2d 270; *Univ. Circle Research Ctr. Corp. v. Galbreath Co.* (1995), 106 Ohio App.3d 835, 840, 667 N.E.2d 445. When determining whether to pierce the corporate veil, a trial court must decide each case sui generis, on its own facts. *Yo-Can, Inc. v. Yogurt Exchange, Inc.,* 149 Ohio App.3d 513, 2002-Ohio-5194, 778 N.E.2d 80, ¶ 45. "Because of the delicate judgments involved in assessing the special facts in each case, and ultimately, in deciding whether the corporation has been used to an end subversive to its policy or when it would be 'unjust' not to disregard the corporate entity, 'piercing the corporate veil' is primarily a matter for the trier of fact." (Citations omitted.) *Clinical Components, Inc. v. Leffler Industries, Inc.* (Jan. 22, 1997), 9th Dist. No. 95CA0085, *3. Thus, appellate review of the trial court's decision is limited to finding whether competent, credible evidence supports the trial court's decision. *Longo Constr., Inc. v. ASAP Tech. Serv., Inc.* (2000), 140 Ohio App.3d 665, 671, 748 N.E.2d 1164; *Sanderson Farms, Inc. v. Gasbarro,* 10th Dist. No. 01AP-461, 2004-Ohio-1460, ¶ 25.

{¶ 30} The first prong of the *Belvedere* test "is a concise statement of the alter ego doctrine; to succeed a plaintiff must show that the individual and the corporation are fundamentally indistinguishable." *Belvedere*, 67 Ohio St.3d at 288, 617 N.E.2d 1075. In this case, DiPasquale and Maffei are S&R's sole shareholders. But this fact alone does not prove that their control over S&R was "so complete that the corporation has no separate mind, will, or existence of its own." Id. at paragraph 3 of the syllabus. "A corporation is a separate legal entity from its shareholder even

where there is only one shareholder in the corporation." *Humitsch v. Collier* (Dec. 29, 2000), 11th Dist. No. 99-L-099, 2001 WL 20733.*4.

{¶ 31} "[I]n applying the 'instrumentality' or 'alter ego' doctrine, the courts are concerned with reality and not form, with how the corporation operated and the individual defendant's relationship to that operation." *DeWitt Truck Brokers, Inc. v. W. Ray Flemming Fruit Co.* (C.A.4, 1976), 540 F.2d 681, 685. Ohio courts have looked at various factors when determining whether a shareholder's control over a corporation is "so complete that the corporation has no separate mind, will, or existence of its own." *Belvedere,* at paragraph three of the syllabus. These factors include (1) the failure to observe corporate formalities, (2) shareholders holding themselves out as personally liable for certain corporate obligations, (3) diversion of funds or other property of the company for personal use, (4) absence of corporate records, and (5) the fact that the corporation was a mere facade for the operations of the dominant shareholders. *LeRoux's Billyle Supper Club v. Ma* (1991), 77 Ohio App.3d 417, 422-423, 602 N.E.2d 685; see also *Link v. Leadworks Corp.* (1992), 79 Ohio App.3d 735, 744, 607 N.E.2d 1140. In this case, there is competent, credible evidence to support the trial court's conclusion that DiPasquale and Maffei "are merely principals or shareholders in the Defendant Corporation."

{¶ 32} On the one hand, the business practices of S&R are minimal and involve only appellees DiPasquale and Maffei. The two would meet informally to discuss the business and actions of S&R on a weekly basis. There was no formal or written business plan, no written minutes, no written resolutions prior to corporate actions, and no written bylaws, nor were there any written records aside from the

checks that DiPasquale wrote to pay the bills and corporate taxes. S&R did not have annual meetings or insurance for the protection of investments.

{¶ 33} On the other hand, although DiPasquale and Maffei did not observe all or perhaps many corporate formalities, the two did meet weekly to discuss matters regarding S&R. There is no allegation that either DiPasquale or Maffei held himself or herself out to be personally liable for certain corporate obligations. Nothing in the record indicates that either the property in question or the adjacent 120-acre parcel owned by S&R was being used by DiPasquale or Maffei for personal purposes. Because there were no profits and the land had not been used for personal purposes, there is no evidence that there had been a diversion of funds or corporate property for personal use. While it is clear that minimal corporate records exist for S&R, DiPasquale did testify as to a corporate checking account, land contract, contract for environmental consulting services, and bills paid for corporate taxes all on behalf of S&R. In addition, there is no evidence that S&R was a mere facade for the actions of either DiPasquale or Maffei.

{¶ 34} Neither appellee is a resident of Ohio, and neither maintains an office in Ohio. In their personal capacity, neither DiPasquale nor Maffei transacts business, solicits business, or engages in any other persistent course of conduct in Ohio. Neither appellee has placed any product or goods into the stream of commerce that flowed into Ohio.

{¶ 35} While evidence tending to support both positions does exist, the record contains competent, credible evidence from which the trial court could determine that the first prong of the *Belvedere* test had not been met. Therefore, the trial court's

decision is not against the manifest weight of the evidence. Because the three-prong test of *Belvedere* requires that each prong be satisfied and because the trial court did not make specific findings of fact or conclusions of law relating to the second or third prongs, further analysis is unnecessary.

Issue No. 2

{¶ 36} "Whether granting personal jurisdiction over Defendants DiPasquale and Maffei would deprive them of Due Process of Law under the Fourteenth Amendment."

{¶ 37} Because the state in its circular arguments has failed to establish that Ohio's long-arm statute confers personal jurisdiction over appellees DiPasquale and Maffei and thus has failed to establish the first step of the personal-jurisdiction analysis set out in *U.S. Sprint Communications Co. Ltd. Partnership*, we need not address step two to determine whether granting jurisdiction under the statute and the rule would deprive DiPasquale and Maffei of the right to due process of law pursuant to the Fourteenth Amendment to the United States Constitution.

{¶ 38} Although another fact-finder might have come to a different conclusion regarding the issue of whether to pierce the corporate veil in this case, this abstract possibility is not a basis for reversing the trial court in this appeal. *Gomez v. Gomez*, 7th Dist. No. 06 NO 33, 2007-Ohio-1559, ¶ 42. There are sufficient competent, credible facts in the record to support the trial court's judgment, and appellants' first assignment of error is hereby overruled.

Assignment of Error Number Two

**{¶ 39}** "The trial court erred in claiming defendants DiPasquale and Maffei are merely shareholders in the defendant corporation."

Issue No. 1

**{¶ 40}** "Whether being 'mere shareholders' is a defense to individual liability."

**{¶ 41}** As earlier stated, there is competent, credible evidence to support the trial court's finding that DiPasquale and Maffei are merely shareholders in the corporation. The state's focus under the second assignment of error appears to be that this status as a "mere shareholder" does not allow a person to escape individual liability when that shareholder is the same person who violates the environmental laws in the state of Ohio. Again, appellants focus on outcome: whether appellants should be liable for violations of the state law. The trial court, in holding the evidentiary hearing and issuing its judgment, was not making a finding of fact or conclusion of law regarding liability. Rather, the focus of the evidentiary hearing and the judgment of the court rested solely on the threshold issue of personal jurisdiction. The case on which appellants rely discusses the extension of liability to an individual but says nothing regarding the initial determination whether personal jurisdiction exists. *State ex rel. Petro v. Mercomp, Inc.*, 167 Ohio App.3d 64, 2006-Ohio-2729, 853 N.E.2d 1193, at ¶ 27-31. Further, in the *Mercomp* case, the trial court found that step one of the three-step *Belvedere* test had been met and thus the corporate veil was pierced, whereas the trial court in this case found that appellants did not meet their burden pursuant to *Belvedere*. Id. at ¶ 23, see also *Belvedere Condominium Unit Owners' Assn.*, 67 Ohio St.3d at 289, 617 N.E.2d 1075. Because this

assignment of error argues the alleged liability of a defendant and not personal jurisdiction over a given defendant, it is without merit and is hereby overruled.

Conclusion

{¶ 42} Each assignment of error advanced by appellants primarily focuses on the extension of liability rather than on an analysis of personal jurisdiction. Although appellants properly identify the three *Belvedere* factors that a court must use to determine whether to pierce the corporate veil and allow for the extension of personal jurisdiction, appellants have not established that any of the three factors have been met. It is clear that the first factor, dealing with whether the corporate structure was improperly maintained so that the shareholders are actually the alter ego of the company, was not proven adequately to the trial court. The trial court found that appellees were mere shareholders and was not persuaded to pierce the corporate veil and confer personal jurisdiction over appellees. There is competent, credible evidence from which the trial court could base this conclusion. Appellants have not convinced us that any legal or factual error occurred rising to the level of reversible error. Therefore, we overrule appellants' assignments of error and affirm the judgment of trial court quashing the service of summons due to lack of personal jurisdiction.

Judgment affirmed.

VUKOVICH and DEGENARO, JJ., concur.